[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action was brought by the plaintiff, Norman Shemitz, against the defendant, Nicholas Riggione, claiming unpaid rent and use and occupancy, utility bills, and repairs and maintenance costs to be paid by the defendant in accordance with the lease agreement for commercial space located at 1501 Boston Post Road, Milford, CT.
The defendant denied the plaintiff's claim and, after the evidence was presented, moved to amend his answer, adding a special defense alleging that the plaintiff had failed to provide the defendant with notice of default and an opportunity to cure, as required by section 21 of the lease agreement (Plaintiff's Exhibit A). The plaintiff objected to the amendment as untimely and unduly prejudicial to his position. Although the Court will allow the amendment, it notes at the outset that the testimony presented at trial did not support the defendant's special defense.
The plaintiff established that the rent of $1,000.00 was not paid for the month of January, 2000, despite notice of default to the defendant (Plaintiff's Exhibit L). He further testified that the defendant remained in possession of the premises for the months of February, March and April without paying use and occupancy for those three months. Although the defendant testified that he vacated the premises during the month of February, he also conceded that he did not return the keys to the plaintiff. The plaintiff presented a locksmith's bill in the amount of $447.00 for the cost of changing the locks on April 19, 2000 (Plaintiff's Exhibit E). Therefore, the Court finds that the defendant did not surrender possession until April 19, when the locks were changed. The plaintiff is awarded $1,000.00 rent for the month of January, $2,000.00 use and occupancy for the months of February and March, $600.00 for use and occupancy for the first eighteen days of April and $447.00 for the expense of changing the locks.
The plaintiff also claims utility costs in excess of the amount of the CT Page 12183 base year utilities, as provided for in section 12 of the lease agreement. Although the defendant testified that he was never notified by the plaintiff that he owed any amount for the utilities, the default notices sent regularly by the plaintiff referenced the defendant's "rent default," which would include the utility amounts due as additional rent. In addition to the default notices, the plaintiff also specifically itemized the utility amounts due in his letter to defendant dated February 3, 1999 (Plaintiff's Exhibit M). The Court awards the plaintiff the sum of $8,598.00 for utility costs through December, 1999 in excess of the amount of the base year utilities.
The plaintiff further claims utility bills for January through April, 2000. The Court will award the plaintiff the excess utility bills for the month of January only. The remaining bills, representing the period after the lease had expired, are disallowed since there was no agreement for the defendant to pay those sums. The plaintiff is to provide the court with an affidavit of the excess amounts due for the month of January, 2000 within three weeks of the date of this decision.
The plaintiff's next claim is for maintenance costs which the defendant was responsible for and which, the plaintiff testified, he did not provide. The defendant testified credibly that he arranged for snow plowing and for lawn mowing during the course of his tenancy, and those sums are disallowed.
The final claim made by the plaintiff is for remodeling costs because of water damage to the premises caused by a leaking roof. To support this claim, the plaintiff offered exhibit H, a letter from the defendant to him, signed by both parties, in which the defendant agreed to "repair the interior water damage to the second floor of 1501 Boston Post Road" in exchange for forgiveness of rent. Although it does not specifically refer to replacement of the carpeting, the defendant's reference in his letter to the plaintiff dated June 10, 1996 (Plaintiff's Exhibit G) to soaked carpeting certainly seems to give credence to the plaintiff's claim. The plaintiff is awarded the sum of $4,987.30 for the carpeting.
The Court disallows the plaintiff's claim for prejudgment interest. Costs of prosecution are taxed at $108.80. The plaintiff is further awarded $8,500.00, which the Court finds to be a reasonable attorney's fee for the prosecution of this action.
In summary, the plaintiff is awarded the following damages in addition to the costs and attorney's fee noted above:
Rent for January, 2000 — $1,000.00 CT Page 12184 Use and occupancy for February — April 18, 2000 — $2,600.00 Excess utility costs through December, 1999 — $8,598.00 Excess utility costs for January, 2000 — To be provided Carpet replacement — $4,987.30 Expense of changing locks — 447.00.
Payment in full will be due to the plaintiff through his attorney on or before three weeks from the date the Court is provided with the affidavit of excess utility costs for the month of January by the plaintiff.
BY THE COURT
 __________________ Leavitt, J.
CT Page 12185